IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| TOTALENERGIES MARKETING PUERTO RICO CORP., <br><br> Plaintiff, <br><br> v. <br><br> LUMA ENERGY, LLC AND LUMA ENERGY SERVCO, LLC, <br><br> Defendants. | CIV. NO.: 23-1462 (SCC) |

**OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss by Defendants LUMA Energy, LLC, and LUMA Energy ServCo, LLC (collectively, "LUMA"). *See* Docket No. 11. For the reasons set forth below, the Motion to Dismiss is **GRANTED.**

**I. BACKGROUND**

This dispute arises from a fuel supply agreement ("Bulk Sales Contract") entered into on August 4, 2020, by the Puerto Rico Electric Power Authority ("PREPA") and Plaintiff TotalEnergies Marketing Puerto Rico Corp. ("TEMPR"). *See* Docket No. 1, pg. 1. TEMPR alleges that LUMA "has defaulted on its payment obligations under" the Bulk Sales

Contract, "for which," TEMPR alleges, "LUMA assumed payments [sic] obligations" under the Operation and Maintenance Agreement ("O&M Agreement") into which LUMA entered with PREPA and the Puerto Rico Public Private Partnerships Authority on June 22, 2020. *See id.* at pg. 1, ¶ 27.

TEMPR invokes diversity jurisdiction under 28 U.S.C. § 1332(a). Docket No. 1, ¶ 4. TEMPR "brings this diversity action for declaratory relief, breach of contract, unjust enrichment and damages under Puerto Rico law as a result of LUMA's non-payment of $700,489.93 in fuel delivered directly by" it from August to November 2022. *Id.* at pg. 2. TEMPR alleges that:

> (i) pursuant to section 5.2 of the O&M Agreement, LUMA assumed PREPA's payment obligations thereunder; (ii) the gasoline purchases made under the Bulk Sales Contract were incurred as a result of LUMA's administration of the O&M Agreement and for which LUMA is solely responsible thereunder; (iii) LUMA's retention of the benefit conferred by TEMPR, in the form of unpaid fuel purchases, would be inequitable without

payment for its value, constituting an unjust
enrichment; or (iv) if the Bulk Sales Contract is
determined not to be a System Contract, LUMA
entered into a direct contract with TEMPR, and
thus is liable for product sold and delivered.
*Id.* at pg. 2.

LUMA moved to dismiss. *See* Docket No. 11. TEMPR
opposed the request. *See* Docket No. 30. LUMA replied. *See*
Docket No. 38. TEMPR surreplied. *See* Docket No. 41.

## II. ANALYSIS

Federal courts have "original jurisdiction of all civil
actions where the matter in controversy exceeds the sum or
value of $75,000 . . . and is between . . . citizens of different
States." 28 U.S.C. § 1332(a). Where, as here, a party invokes
the subject-matter jurisdiction of a federal court under 28
U.S.C. § 1332(a), the parties must be completely diverse.
*Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In other words,
"diversity jurisdiction does not exist where any plaintiff is a
citizen of the same state as any defendant." *Alvarez-Torres v.
Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 54 (1st Cir. 2009) (citations
omitted).

TEMPR alleges, and LUMA does not contest, that TEMPR "is incorporated and has its principal place of business" in Puerto Rico. Docket No. 1, pg. 4. A "corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). In short, TEMPR is a citizen of Puerto Rico.

The Court now turns to the citizenship of LUMA. The citizenship of a limited liability company ("LLC") is determined by the citizenship of its members. *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54–55 (1st Cir. 2006). TEMPR alleges, and LUMA does not contest, the following:

> Defendant [LUMA Energy ServCo, LLC] is a limited liability company organized under the laws of the Commonwealth of Puerto Rico and whose sole member is [LUMA Energy, LLC]; [in turn] Defendant [LUMA Energy, LLC] is a limited liability company organized under the laws of the Commonwealth of Puerto Rico whose members are Quanta Utility Operations, LLC and 2240485 Alberta Ltd.; [in turn] Quanta Utility Operations, LLC's sole member is

> Quanta Services, Inc., which is incorporated in Delaware and headquartered in Texas; [and] 2240485 Alberta Ltd. is wholly owned by Canadian Utilities Limited, which is wholly owned by ATCO Ltd., a Canadian-based publicly traded company.
>
> Docket No. 1, pgs. 4–5.

From all this, the Court concludes that complete diversity exists between TEMPR and LUMA.

LUMA *non sufficit*, says LUMA, however. It argues that the Court lacks subject-matter jurisdiction because "PREPA, who [sic], like Plaintiff, is a citizen of Puerto Rico for diversity purposes, is an indispensable party in the present case." Docket No. 11, pg. 2. LUMA invokes Rule 12(b)(7), under which a party can move to dismiss for failure to join a party under Rule 19. *See* Fed. RR. Civ. P. 12(b)(7), 19.

The Court starts with the standard of review. In deciding this Rule 12(b)(7) motion, the Court is "not limited to the pleadings" and can consider "other relevant extra-pleading evidence." 5C Wright et al, Federal Practice and

Procedure § 1359.[1] Further, the Court accepts "all factual allegations in the complaint as true and draws inferences in favor of the non-moving party." *Id.*[2] LUMA, being the movant, bears "the burden . . . to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence." *Id.*[3]

---

[1] *See also MacDonald v. Cape Cod Cent. R.R., Inc.*, 2019 WL 3818298, at * 4 (D. Mass. Aug. 14, 2019) ("Courts are 'not limited to the pleadings' in considering a motion to dismiss under Rule 12(b)(7) and may rely on certain 'relevant extra-pleading evidence.'") (quoting *Axis Ins. Co. v. Hall*, 287 F.R.D. 110, 113 (D. Me. 2012)).

[2] *See also Samo-Maldonado v. Billy Graham Evangelistic Ass'n*, 2018 WL 11436768, at * 2 (D.P.R. Dec. 7, 2018) ("[A] court must accept the allegations contained in the plaintiff's complaint as true for the purpose of the Rule 12(b)(7) inquiry.") (quoting throughout *McCaskill v. Gallaudet Univ.*, 36 F.Supp.3d 145, 151 (D.D.C. 2014)); *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n. 1 (9th Cir. 2011); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n. 2 (7th Cir. 2001).

[3] *See also Advanced Cardiology Ctr. Corp. v. Rodríguez*, 675 F.Supp.2d 245, 250 (D.P.R. 2009) ("Although the First Circuit has yet to explicitly state who carries the burden on a Rule 12(b)(7) motion, those courts of appeals that have addressed the issue all lay the burden upon the defendant.") (citing *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005);

"In proceeding with its inquiry," the Court "keep[s] in mind the policies that underlie Rule 19." *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 15 (1st Cir. 2008). Those "includ[e] the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." *Id.* at 15–16 (quoting throughout *Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982)).[4] Ultimately, Rule 19 "is designed to protect the interests of parties who are not yet involved in ongoing litigation."

---

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994); *Ilan–Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981)); *Raytheon Co. v. Continental Cas. Co.*, 123 F.Supp.2d 22, 32 (D. Mass. 2000) ("Under a motion pursuant to Rule 12(b)(7), the moving party carries the burden of showing why an absent party should be joined." (citing *Rand v. Bath Iron Works Corp.*, No. 99–227–P–C, 2000 WL 760730, at * 2 (D. Me. Mar. 21, 2000)).

[4] *See also Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 227 (3d Cir. 2023) ("'Law, in its most general and comprehensive sense, signifies a rule of action.' The Federal Rules of Civil Procedure are rules of action designed to secure the just and efficient determination of civil proceedings. And their joinder provisions promote the ancient balance among efficiency, fairness, and finality.") (quoting 1 William Blackstone, Commentaries *38 (George Sharswood ed., 1893) (1765)).

*Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 25 (1st Cir. 2010).

The inquiry has two steps. *See id.*; *Picciotto*, 512 F.3d at 15–19; *Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 134–35 (1st Cir. 1989). The Court "must first determine whether the absent person is a necessary party." *Picciotto*, 512 F.3d at 16 (citing *Pujol*, 877 F.2d at 134). The "term 'necessary' is a vestige of a superseded version of Rule 19 and no longer appears in the text," *Jiménez*, 597 F.3d at 25 n. 3, which, instead, now speaks of "[r]equired [p]art[ies]," Fed. R. Civ. P. 19(a). Despite the change, many courts "continue to cling to the traditional nomenclature," but this makes no difference since "the word is used as a term of art and signifies desirability rather than actual necessity." *Jiménez*, 597 F.3d at 25 n. 3 (citation omitted).

The Court goes back to the text of Rule 19 to determine necessity "according to the criteria laid out in Rule 19(a)." *Id.* at 25. The rule lists three criteria: whether "in th[e] [required/necessary] person's absence, the court cannot accord complete relief among existing parties" or whether "that person claims an interest relating to the subject of the

action and is so situated that disposing of the action in the person's absence may" either "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." As long as one of these three criteria applies, there is necessity. *Picciotto*, 512 F.3d at 16 n. 11.

Here, there is necessity. This is a breach of contract case. "Generally," in such "actions, all parties to the contract are necessary ones." *Rivera Rojas v. Loewen Grp. Int'l, Inc.*, 178 F.R.D. 356, 361 (D.P.R. 1998) (citing *Acton*, 668 F.2d at 78–79; *E & E Inv., Inc. v. Simmons Co.*, 169 F.R.D. 467, 471–72 (D.P.R. 1996); *F & M Distributors v. Am. Hardware Supply*, 129 F.R.D. 494, 497–98 (W.D. Pa. 1990)).[5] There are two contracts at issue in this case, the Bulk Sales Contract and the O&M Agreement, and PREPA signed the former with TEMPR and the latter

---

[5] *See also Blacksmith Invs., LLC. v. Cives Steel Co.*, 228 F.R.D. 66, 74 (D. Mass. 2005) ("As a general statement, '[i]t is well established that a party to a contract which is the subject of the litigation is considered a "necessary" party.'") (quoting *Sever v. Glickman*, 298 F.Supp.2d 267, 275 (D. Conn. 2004)); *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) (collecting cases).

with LUMA. LUMA did not sign the Bulk Sales Contract.
TEMPR insists that LUMA assumed the obligations under
that contract by entering into the O&M Agreement with
PREPA. Docket No. 1, pg. 1. The O&M Agreement does not
make reference to the Bulk Sales Contract. Nevertheless,
TEMPR argues that the Bulk Sales Contract "falls squarely
within" those contracts that under the O&M Agreement
LUMA agreed to assume. Docket No. 30, at p. 2. LUMA,
however, argues that the Bulk Sales Contract was not one of
the contracts it assumed. Docket No. 11, pg. 6. All these are
contract interpretation issues, but the bottom line is that
TEMPR's contract is with PREPA and that LUMA's contract
is also with PREPA. Disposing of this case in the absence of
PREPA would "as a practical matter impair or impede"
PREPA's "ability to protect [its] interest[s]" or leave LUMA
"subject to a substantial risk of incurring double, multiple, or
otherwise inconsistent obligations." *See* Fed. R. Civ. P. 19(a).
*See also Global Discount Travel Services LLC v. Trans World
Airlines, Inc.*, 960 F.Supp. 701, 707–708 (S.D.N.Y. 1997)
(Sotomayor, J.) (finding that non-party company, "[a]s a

direct party to the contract which is under dispute," was a necessary party "for at least" the three reasons outlined in Rule 19(a)).

To be sure, the outcome of this case would not have *res judicata* effect on PREPA. However, "even without a direct preclusive effect, an adverse judgment could be persuasive precedent in a subsequent proceeding." *Picciotto*, 512 F.3d at 16 (cleaned up).

The Court notes that the fact that PREPA has been silent does not mean that PREPA has not "claim[ed] an interest relating to the subject of" this case, as is required by the text of Rule 19(a). The phrase "'claims an interest' in this context means nothing more than appears to have such an interest." *Tell v. Trs. of Dartmouth Coll.*, 145 F.3d 417, 419 (1st Cir. 1998). "In all likelihood, the word 'claims' was used by the drafters not to suggest that a necessary party had to come forward—such 'parties' are commonly not heard from at all—but to debar any inference that the necessary party had to have a proven interest as opposed to a colorable claim to one." *Id.* at 419 n. 2.

The Court takes into account that necessity in this context "signifies desirability." *Jiménez*, 597 F.3d at 25 n. 3. With this principle and the facts of this case in mind, and since at least one of the three criteria of Rule 19(a) applies, the Court finds PREPA to be a required party under Rule 19(a).

Since PREPA is a required party, it "should be joined 'if [f]easible.'" *Picciotto*, 512 F.3d at 17 (quoting Fed. R. Civ. P. 19). TEMPR concedes that "TEMPR and PREPA are co-citizens." Docket No. 30, pg. 28. Since PREPA "cannot be joined in the action without divesting" this Court "of subject-matter jurisdiction," as PREPA becoming a defendant would destroy complete diversity, the Court turns to Rule 19(b) to "determine[e] whether [PREPA] is 'indispensable.'" *Jiménez*, 597 F.3d at 25. This is the second and final step of the analysis. *See id.*; *Picciotto*, 512 F.3d at 15–19; *Pujol*, 877 F.2d at 134–35.

Before making a determination on Rule 19(b), the Court must again discuss terminology. Just like the term "necessary," the term "indispensable" used to but no longer appears in the text of Rule 19; however, "courts still use it as shorthand for whether dismissal under Rule 19(b) is

warranted." *Axis Ins. Co. v. Hall*, 287 F.R.D. 110, 113 (D. Me. 2012).

Under Rule 19(b), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). It also states that "[t]he factors for the court to consider include" the following:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.
> *Id.*

These four factors "implicate many of the same practical judgments required by the Rule 19(a) determination." *Picciotto*, 512 F.3d at 18 n. 13. Further, they

"do not constitute an exhaustive canvass." *B. Fernández &
HNOS, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 23 (1st Cir. 2008)
(citations omitted). The Supreme Court has identified four
interests associated with the four factors, respectively: the
absent party's interest; the defendant's interest in avoiding
inconsistent relief, multiple litigations, or sole responsibility
for liability shared with the absent party; the interest of the
public and the courts in consistent, complete, and efficient
settlement of disputes; and the plaintiff's interest in an
appropriate forum to seek relief. *See Provident Tradesmens
Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 109–11 (1968).

Besides the four factors, the Court can "take into
account other considerations in determining whether or not
to proceed without the absentee as long as they are relevant
to the question of whether to proceed in 'equity and good
conscience.'" *B. Fernández*, 516 F.3d at 23 (citations omitted).
Further, "the indispensability analysis involves 'the balancing
of competing interests' and 'must be steeped in pragmatic
considerations.'" *Id.* (quoting *In re Olympic Mills Corp.*, 477
F.3d 1, 9 (1st Cir. 2007)).

TotalEnergies Marketing Puerto Rico Corp. v.                        Page 15
LUMA Energy, LLC and LUMA Energy ServCo,
LLC

Regarding the first factor, an adverse judgment in this case could be prejudicial to PREPA. PREPA was the signatory to the Bulk Sales Contract with TEMPR, and a ruling for the latter could be unfavorable to the former. PREPA certainly has an interest in this litigation. *See Provident*, 390 U.S. at 110. A ruling against LUMA "would, as a practical matter, impair" PREPA's "probability of success in a future proceeding and" its "ability to reach a favorable settlement" and subject it "to inconsistent obligations." *Acton*, 668 F.2d at 81. Further, LUMA argues that, "as a matter of law, it is PREPA, and not LUMA, who [sic] is legally obligated to pay the sums requested by" TEMPR. Docket No. 11, pg. 7. In other words, it is not as if LUMA will pursue PREPA's case for it. *See Tell*, 145 F.3d at 419. This factor weighs in favor of dismissal.

Turning to the second factor, neither party has identified "the extent to which any prejudice could be lessened or avoided by" measures such as "protective provisions in the judgment" and "shaping the relief." LUMA certainly has an interest, however, in avoiding inconsistent relief, multiple litigations, or sole responsibility for liability

shared with PREPA, *see Provident*, 390 U.S. at 110, and in its Motion to Dismiss it outlines concerns that it "will be ordered to pay the sums and damages requested by" TEMPR, Docket No. 11, pg. 8. This factor weighs in favor of dismissal.[6]

As for the third factor, considering PREPA's status as the only signatory to both contracts at issue, there is considerable concern that judgment entered in PREPA's absence would not be adequate. LUMA argues that "any payment made pursuant to the Bulk Sales Contract would have to be approved by PREPA" and that "LUMA would [then] process PREPA's payment directive." *Id.* at pg. 7. In the

---

[6] The Court notes that the Wright treatise emphasizes this factor "when the validity of the assignment itself is at issue" and "when there only has been a partial assignment." *See* 7 Wright et al, Federal Practice and Procedure § 1613 ("An assignor of rights and liabilities under a contract generally is not a required party in a suit brought by the assignee. Indeed, in most cases the assignor would not even be a proper party inasmuch as the assignor may have lost the right to bring an independent action on the contract by virtue of the assignment. On the other hand, when the validity of the assignment itself is at issue, the assignor's joinder may be required. Further, when there only has been a partial assignment, courts may require joinder so that the entire contractual interest that is in dispute is represented in the action. The question of compulsory joinder in these cases depends on whether the court can frame a decree that will give proper relief to plaintiff without prejudicing the absent person's interest.") (citations omitted).

"complex and duplicative scenario" of maintaining this case without PREPA, "[t]he public interest in avoiding piecemeal and inefficient litigation is especially strong," and "it is evident that [a] state court action" that includes all three parties would properly "adjudicate the whole controversy." *Acton*, 668 F.2d at 81 (citation omitted).[7] And it is not as if it would be easy for the loser of this case, if it were to reach completion, to litigate again against PREPA. *Cf. Axis*, 287 F.R.D. at 116 (finding that this factor "somewhat favors allowing the action to proceed" in federal court because the absent party's "potential claim appears to be limited to $5,000.00," thus "making it highly unlikely that [the absent party] would find litigation worthwhile"). This factor weighs in favor of dismissal.

Finally, TEMPR would have an adequate remedy if this case is dismissed. Whether there is an adequate forum for

---

[7] *See also Rivera Rojas*, 178 F.R.D. at 363 ("[T]his case could be resolved more simply by a single lawsuit in the local courts. The concerns of incomplete relief or inefficiency would not be present. Thus, this factor also favors a finding that [the absent party] is indispensable.") (citing *H.D. Corp. of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987, 993 (1st Cir. 1986); *Acton*, 668 F.2d at 81).

TEMPR to pursue its claim, *see Provident*, 390 U.S. at 109, is a question that can easily be answered in the affirmative. The local courts in Puerto Rico are adequate to decide this contract law dispute. *Rivera Rojas*, 178 F.R.D. at 363 (citing *Gay v. AVCO Financial Services, Inc.*, 769 F.Supp. 51, 57 (D.P.R. 1991); *Lopez v. Shearson American Express, Inc.*, 684 F.Supp. 1144, 1150 (D.P.R. 1988)). TEMPR "can join" both LUMA and PREPA "as defendants in a suit in commonwealth court" and has "not given any reason as to why the commonwealth court would be an inadequate alternative,"[8] and the Court "see[s] no reason to believe that the commonwealth court would be an inadequate forum." *Z & B Enters. v. Tastee-Freez Int'l. Inc.*, 162 F. App'x 16, 21–22 (1st Cir. 2006). "Finally, the Supreme Court has suggested that if there is an adequate state forum, the timing of the motion to dismiss can be significant," and LUMA moved to dismiss "at an early stage in this litigation, a factor that slightly favors [its] position because the efficiency

---

[8] Indeed, TEMPR states that "although TEMPR may have an 'adequate remedy' in Puerto Rico court if this case is dismissed, that fact alone does not make PREPA indispensable." Docket No. 30, pg. 30 (citations omitted).

of a state forum has not been compromised by extensive litigation in this Court." *Axis*, 287 F.R.D. at 117 n. 2 (citing *Provident*, 390 U.S. at 116). This factor weighs in favor of dismissal.

Ultimately, the "critical question . . . is 'whether in equity and good conscience' the action may proceed in" the absence of PREPA. *B. Fernández*, 516 F.3d at 23 (quoting Fed. R. Civ. P. 19(b)). Here, the Court, guided by its analysis of the four non-exhaustive factors,[9] finds that it cannot. PREPA being "[no]thing less than indispensable," the Court "must dismiss" this case. *Jiménez*, 597 F.3d at 25.

---

[9] The Court also notes that contracting parties have invariably been described as paradigmatically indispensable by courts in this circuit and by other circuits. *See, e.g., Rivera Rojas*, 178 F.R.D. at 362 ("A contracting party is the paradigmatic example of an indispensable party.") (citing *Rashid v. Kite*, 957 F.Supp. 70, 74 (E.D. Pa. 1997); *E & E*, 169 F.R.D. at 472; *Travelers Indem. Co. v. Household Int'l Inc.*, 775 F.Supp. 518, 527 (D. Conn. 1991)); *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 470 F. Supp. 2d 151, 157 (D. Conn. 2007) ("A party to a contract which is the subject of the lawsuit 'is the paradigm of an indispensable party.'") (quoting *Travelers*, 775 F. Supp. at 527); *Epsilon Energy*, 80 F.4th at 234 n. 15 ("We note we are dealing with contracting parties, who have been described as 'the paradigm of an indispensable party.'") (quoting *Gunvor SA v. Kayablian*, 948 F.3d 214, 221 (4th Cir. 2020)).

The Court notes two final matters. First, TEMPR argues that "LUMA has the option to implead PREPA as a third-party defendant under Rule 14 without destroying this Court's jurisdiction." Docket No. 30, pg. 28 (citing *Baker v. Westin Rio Mar Beach Resort, Inc.*, 194 F.R.D. 393, 397 (D.P.R. 2000); *Caterpillar*, 519 U.S. at 67 n. 1). *See also* Docket No. 41, pg. 4. TEMPR, however, "cannot circumvent complete diversity by artful pleading; otherwise, 'a plaintiff could leave non-diverse defendants out of the original lawsuit and then wait for them to be impleaded or otherwise joined.'" *In re Olympic Mills Corp.*, 477 F.3d at 11 (quoting *Acton*, 668 F.2d at 79).

Finally, LUMA does a 180, asking for dismissal without prejudice in the introduction to the Motion to Dismiss and with prejudice at the end of the same motion. *Compare* Docket No. 11, pg. 2 *with id.* at pg. 9; *see also* Docket No. 38, pg. 9 (asking for dismissal with prejudice). LUMA makes no attempt to enlighten the Court. Moreover, TEMPR avers in the surreply that LUMA's "dismissal argument . . . is *really* a disguise for a motion to dismiss for failure to state a

claim or a motion for summary judgment on the merits."
Docket No. 41, pg. 1 (emphasis in original). TEMPR then
chastises LUMA for not "affording TEMPR the legal
entitlement of having its well-pleaded allegations taken as
true." *Id.*

The Court finds LUMA's unexplained U-turn
inappropriate, but the result stays the same. The Court keeps
in mind its jurisdictional lodestar: federal courts are of limited
jurisdiction. "It is too elementary to warrant citation of
authority," but the Court provides one anyway, that the
Court can inquire *sua sponte* into its jurisdiction. *In re Recticel
Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988). Joinder is
amongst the issues that the Court can and will raise on its own
accord. *Picciotto*, 512 F.3d at 23 n. 21 ("We have squarely held
that a district court may raise the issue of nonjoinder *sua
sponte*.") (quoting throughout *Delgado v. Plaza Las Americas,
Inc.*, 139 F.3d 1, 2 (1st Cir. 1998)).[10] Even if LUMA had not

---

[10] *See also Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) ("A
court with proper jurisdiction may also consider *sua sponte* the absence of
a required person and dismiss for failure to join.") (citing *Minnesota v.
Northern Securities Co.*, 184 U.S. 199, 235 (1902); *Provident*, 390 U.S. at 111).

raised the issue, and regardless of LUMA's arguments in the reply, the Court still finds, under the standard of review outlined above,[11] PREPA to be indispensable.

In short, "[b]ecause Plaintiff's claims should be brought in Puerto Rico's local court, the dismissal shall be without prejudice." *Rivera Rojas*, 178 F.R.D. at 365.[12]

### III. CONCLUSION

In view of the above, the Court **GRANTS** the Motion to Dismiss at Docket No. 11. The case is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of November 2024.


<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES DISTRICT COURT JUDGE

---

[11] Lest there be any doubt, that includes accepting factual allegations in the complaint as true and drawing inferences in favor of TEMPR.

[12] *See also* 5C Wright et al, Federal Practice and Procedure § 1359 (noting that "dismissal under Rule 12(b)(7) is not considered to be on the merits and is without prejudice").